| ROWLAND J. MARTIN | ) | TEXAS COURT OF APPEALS |
|---|---|---|
| Appellant | ) | |
| | ) | |
| v. | ) | FOR THE FOURTH DISTRICT |
| | ) | |
| EDWARD BRAVENEC AND 1216 | ) | |
| WEST AVE. INC. | ) | |
| Appellees | ) | BEXAR COUNTY, TEXAS |

## APPELLANT'S ADVISORY ON FRAUD ON THE COURT, FURTHER NOTICE OF BREIFING AMENDMENTS, AND SECOND SUPPLEMENTAL APPENDIX

**TO THE HONORABLE FOURTH COURT OF APPEALS:**

Appellant Rowland J. Martin, reserving all arguments and authorities cited in his earlier briefing submissions of record except as otherwise noted below, files this *"Appellant's Advisory On Fraud On The Court, Further Notice of Briefing Amendments, and Second Supplemental Appendix,"* to give notice that his affirmative defense in the above styled case asserts a paramount interest in title to the property known as 1216 West Ave., San Antonio, Texas, of which Torralba Properties, LLC is the record owner, *cf., Zuniga v. Grose, Locke, & Hebdon,* 878 S.W. 2d 313, 318 (Tex. App. San Antonio 1994, writ ref'd), and that immunity is claimed from the res judicata effect of the choice of law and judgment in *Martin v. Grehn,* Case No. SA 11-CV-0414 for the reasons set forth in his briefings of record and in the supplementations below, *Batzel v. Smith,* 333 F.3d 1018,1025 (9th Cir. 2003), *cert. denied* 541 U.S. 1085 (2004)..

### SUPLEMENTAL STATEMENT OF THE CASE

On January 30, 2015, Appellees filed a pleading which, though styled as a motion to dismiss, to replead or for extension of time, makes no reference to any element of the cause of action they originally plead, and appears instead to prosecute a line of argument that was not

presented in the trial court proceedings leading to the orders designated for interlocutory appeal.[1] Out of an abundance of caution to aid the Court in its duty to ascertain interlocutory jurisdiction or the lack thereof, Appellant amends his brief of record to incorporate the terms set forth in the Court's order, that "in disposing of this appeal, this court will consider only those issues raised in appellant's brief that relate to the orders this court has expressly identified as the subject of this appeal." Appellant construes the order in conformity with statutory criteria for review of live issues in Tex. Civ. Prac. & Rem. Code Sec. 27.011(b). While the defenses, privileges and immunities presented in Appellant's briefings of record are faithful to the statutorily authorized standards, Appellant has cause to believe that Appellees forfeited key parts of their litigation by transferring the subject property to Torralba Properties on July 8, 2014, by replacing their tortious interference claim with a "First Amended Petition" the same day, and by withholding disclosures about the transfer in proceedings from July 17, 2014 to December 8, 2014. *N.Y. Underwriters Ins. Co. v. Sanchez*, 799 S.W.2d 677, 679 (Tex. 1990).

## APPELLANT'S FOURTH ISSUE FOR INTERLOCUTORY REVIEW: EVIDENCE OF PROBABLE CAUSE FOR A FRAUD ON THE COURT QUESTION VITIATES THE PRESUMED LEGITIMACY OF BOTH ORDERS UNDER REVIEW.

Appellees' lawsuit was brought for the improper purpose of suppressing future lis pendens speech, and was moot as of July 9, 2014 when they prosecuted motions to secure such

---

[1] Careful examination reveals that paragraphs 3 and 5 contain false and misleading statements that tend to distort the true facts surrounding Bravenec's chain of title. In paragraph 3, Appellees state that the foreclosure of 1216 West Ave. took place on October 3, 2003. But see, Court Reporters' Transcript for Hearings on July 9, 2014, p. 22, lines 18 – 20 ("Q: In 2006, a foreclosure took place on that property? A; Yes, sir."). In paragraph 5, Deadman creates the false impression that the foreclosure in McKnight and Bravenec v. Reliant Financial, Inc. et al, Case No. 2006-CI-15329, preceded the bankruptcy petition filed on May 2, 2006 in In re Moroco Ventures, LLC, Case No. 06-50829. *But see,* "Results Obtained" section on Page 3 of the Final Account Of Attorney John Tutt in Exhibit A of Appellant's Second Supplemental Appendix (noting that the going concern value of the Debtor deteriorated "due to continuing interference from certain creditors," and that reorganization plan was withdrawn after the primary asset was foreclosed by them in October 2006.) In paragraph 25, moreover, Deadman misleads the Court again by stating that Appellant failed to comply with the order on December 4, 2014, thus obscuring the fact that a response was both filed and ruled upon on December 8, 2014.

2

relief without disclosing changed jurisdictional circumstances arising from the transfer of the subject property from Appellee Bravenec to Torralba Properties LLC on July 8, 2014.

## STATEMENT OF FACTS

A comparison of deed and docket records shows a pattern of conduct by Attorneys Bravenec and Deadman in which they fabricated fact issues in pleadings filed on July 8, 2014 and in testimony on July 9, 2014 and July 17, 2014, for the purpose of maintaining a legal action to suppress lis pendens speech that had not occurred at the time they filed their action.

**A.      On July 8, 2014 Bravenec Transferred The Subject Property To Torralba Properties, And On The Same Day, Deadman Filed An Amended Pleadings Which Concealed The Transfer To Suggest That Bravenec Was Still The Owner.**

The underlying motive for the Appellees' legal action is clearly reflected in Attorney Deadman's exchange with the trial court on May 23, 2014:

| | |
|---|---|
| *The Court*: | Okay. And your request for injunction is to prevent him filing the lis pendens. |
| *Mr. Deadman*: | That's the sole purpose, Judge …. In addition, we've asked that they not contact the lender. What's happened in the past is, even if there's not a lis pendens, he will contact the lender or the purchaser to let them know verbally, there's clouds on title, he has an interest… |

Court Reporters' Transcript from May 23, 2014, at p. 6, in Exhibit D of Appellant's Second Supplemental Appendix. While Appellant disputes the Appellees' characterization of events, there is no material dispute that Appellees sought to suppress communications noticing a judicial proceeding, and criticizing the quality of legal services provided by Bravenec's firm as Appellant's former attorneys of record, not to mention a matter of public concern relating to Bravenec's candidacy for judicial office. See, Tex. Civ. Prac. & Rem. Code Sec. 27.001 (3) and (4); *and see, Avila v. Larrea*, 394 S.W.3d 646 (Tex. App.—Dallas 2012, pet. denied) (TCPA case involving issues about speech criticizing provider of legal service).

3

The entire record of Appellees evidence, consisting of hearing transcript of Bravenec's testimony, an order in Case No. 2006-CI-15329, and seven orders in Federal District Court Case No. SA 11-CV-0414 and the appeal therefrom in U.S. Court of Appeals Case No. 13-50070 ("the 2010 case") leads to the same conclusion. In short, Appellees responded to the anticipated exercise of the right to file unpublished lis pendens notices in the future, and the exercise of the right to petition for collateral review of purchase money covenants and equitable servitudes ancillary to the 2010 case.

Two events that occurred on July 8, 2014 establish probable cause to believe that Attorneys Bravenec and Deadman engaged in conduct to mislead the trial court. Bravenec recorded a deed attesting to the fact that he had conveyed the subject property to Torralba Properties, LLC. The deed to Torralba records exceptions to conveyances and warranties relating back to Appellant's purchase money interests, and was executed subject to a recorded notice of lis pendens in the docket of Case No. 2014-PC-07644. The same day, Attorney Deadman filed a "First Amended Petition" in the docket of Case No. 2014-PC-07644. The pleading conceals the transfer from the trial court, and attempts to create the impression that Bravenec is still the owner, the pleading voluntarily alleges that the contracting parties were aware of clouds on Bravenec' title, and that the purpose of the pleading was to suppress Appellant's ability to communicate with pendent lite purchasers and the courts.

**B.    The Trial Court's Pre-Stay Orders Denying TCPA Dismissal Relief On July 9, 2014 And July 17, 2014 Were Predicated On Bravenec's Concealment of Deed Records And Deadman's Lack of Candor To The Trial Court.**

On July 9, 2014 and July 17, 2014, unaware that Bravenec had recorded a deed conveying the subject property, the trial court entered oral and written orders respectively effecting the denial of dismissal relief that is the subject of the instant interlocutory appeal. In

proceeding to enter these orders, the court relied heavily testimony from Attorneys Deadman and Bravenec on July 9, 2014 about prospective transactions and about Bravenec's supposed injuries from lis pendens speech:

THE COURT: And there is a prospective buyer now?

DEADMAN: There is.

THE COURT: Name the buyer. I just want to make sure that I don't know them.

DEADMAN: I believe that it's One For Autism.

Court Reporter's Transcript for July 9, 2014, at p. 11. According to Bravenec and Deadman, every lis pendens notice that Appellant filed prevented One For Autism from completing a purchase transaction with Bravenec, and refers to only a single property interest which Appellant's recorded in defiance of the judgment in *Martin v. Grehn* in his capacity as successor to Chapter 11 Debtor Moroco Ventures, LLC. Id. at p. 42, lines 4 -9.

In reality, Deadman's representation to the trial court, professing the belief that One For Autism was the prospective purchaser, gave cover to Bravenec's testimony on cross-examination in which he deceitfully concealed that a transfer to Torralba had occurred the preceding day.

Q. Are there – you would agree that there are parties in a closing transaction who have interests different than the seller?

A. Of course.

Q. So, would you agree that information that might be disadvantageous to the seller might enable other parties to the transaction to protect their interest?

A. In this case or in abstract?

Q. Both. All of the above.

A. In abstract yes. In this case no.

Q. And why is that not in this case?

5

A.      Because you lost the lawsuit in 2010 and you have no legal interest in the property. So all you're really doing is *keeping us from selling it* by alerting a title company that you might keep suing ...

Court Reporter's Transcription For July 9, 2014 at p. 45 – 46 (emphasis added). Later, Bravenec states as a matter of fact without qualification: "... I have been trying to sell this property for at least nine months *and he has kept me from doing so.*" Id. at p. 35, lines 1- 3 (emphasis added)

The exhibits that Appellees cite to support their res judicata theory refer to a federal district court case that culminated where the final order specifically disavows the finality of the judgment in that case as applied to one of the purchase money lis pendens notices that Appellant filed in 2014. See, Defendant's Exhibit 2 in Court Reporters Master Index, dated December 4, 2014. When challenged on cross-examination at the hearing on July 9, 2014, Bravenec's testimony was again obscure and duplicitous. When asked to show where Appellant's unamended original complaint in *Martin v. Grehn* refers to a lien interest litigated by Appellant in his capacity as a lien holder, he answered "... I cannot show you... " Id. at p. 46, lines 13 – 16. When asked about his understanding of the terminology "third party purchase money lien," he responded that "I don't know how to answer that," and eventually stated, "I don't know what that is, sir," Court Reporter's Transcript For July 9, 2014 at p. 51 – 52. [2] In pleadings filed for the hearing on August 14, 2014, he specifically recanted allegations about the inadequacy of monetary damages that he had relied upon to secure preliminary injunctive relief on May 23, 2014. [3]

---

[2]      Judge Hudspeth, the presiding judge in *Martin v. Grehn*, expressly disavowed jurisdiction to expunge Appellant's 2014 lis pendens notice. Record For July 9, 2014 Hearing, Defendant's Exhibit 2, Order Denying Motion To Expunge. Judge Clark, the presiding judge of Adversary Case No. 11-5141, opined that there was no reason why the purchase money controversy could not be resolved in state court. Record For July 9, 2014 Hearing, Defendant's Exhibit 7 (see bankruptcy order attached to perfected lis pendens notice).

[3]      See, references to Defendant's Exhibit E in Court Reporter's Transcript For August 14, 2014, at p. 18 ("THE COURT: Well, it's an admission against interest of an adverse party."

**C. Bravenec's Concealment And Deadman's Lack Of Candor On July 9, 2014 Negate The Legal and Factual Predicates For The Post-Stay Gag Order On July 17, 2014.**

Though the transfer to Torralba altered the legal and jurisdictional position of the controversy, and though the conditions precedent for automatic stay relief were met with a written order denying dismissal on July 17, 2014 and the earlier filing of a notice of appeal on July 9, 2014, the trial court deferred to the Appellees' position that Section 27.003 does not authorize an automatic stay, and proceeded on July 17, 2014 over Appellant's objections to finalize its gag order form the week before. See, Temporary Injunction Order of July 17, 2014.

The first ordering clause of the gag order purports to enjoin the filing of "any document whatsoever with this court, any other court, [or] the Bexar County Deed Records Office that in any way relates Plaintiffs or the real property ..." Although consistent with the oral order that "[y]ou are not only not to file Lis Pendens anywhere, you are not to put any prospective purchasers on any kind of notice that you have any claim in this property directly or indirectly, either through agents, employees, servants attorneys, etcetera," Court Reporter's Transcription For July 9, 2014 at p. 73, the written version was crafted so absurdly that it could literally be construed as an attempt to prohibit the filing of even a statutorily authorized notice of appeal.

The second ordering clause directs the Bexar County Clerk to cancel ... "any document filed by Rowland J. Martin, Jr. entitled 'Notice of Apparent Liability For Purchase Money Claims' ....'"Perfected Lis Pendens' or any like titled document." The perfected lis pendens document existed before July 9, 2014, but not when the temporary injunction motion was set for hearing on May 23, 2014, and is noticed only in Appellees' pleadings in their First Amended Petition filed on July 8, 2014 with no supporting evidence of a nexus to the 2010 case to warrant suppression. The last phrase covers any filing that even remotely concerns the subject property, not just the post-petition foreclosure transaction that was the subject of *Martin v. Grehn*.

The third ordering clause purports to enjoin communications with "any title company, any potential buyer, bank or otherwise interfering with the potential sale of the Property in any manner whatsoever." This clause is unsupported by reference to any chain of title evidence bearing on purchase money lien interests alleged to run with the land in favor of Appellant.

The fourth ordering clause prohibited "joining any third parties or additional defendants to this suit without prior approval of the court." The need for this clause was obviated by the deed to Torralba Properties on July 8., 2014, but severely prejudiced Appellant's TCPA protected right to petition for relief as the defendant and cross-plaintiff party.

Lastly, the fifth ordering clause compels Appellant to appear at a trial that was scheduled for December 8, 2014. Although the cancellation of the trial schedule accompanying the reinstatement of Case No. 04-14-00483-CV on December 4, 2014, and the Court's order affirming the automatic stay on December 8, 2014, effectively dissolved the temporary injunctive proceeding, it is worthwhile to note the gag order failed to specify a trial location.

In summary, all four decretal clauses bearing on the exercise of the right to free speech and to petition restrain future communications within the meaning of Tex. Civ. Prac. & Rem. Code Sec. 27.011. But see, *Kinney v. Barnes*, No. 13-0043 (Tex. 2014), at p. 10 (an injunction against future speech based on past adjudications of the same or similar statements is presumptively unconstitutional as a prior restraint). Appellant timely objected on constitutional and jurisdictional grounds, but the trial court relied on the legal and evidentiary theories propounded by Appellees. See generally, Court Reporter's Transcript For July 17, 2014.

**D.      Bravenec's Concealment Of Deed Records And Deadman's Lack Of Candor Subverted The Judicial Process And Continued A Prior Pattern Of Misconduct.**

Appellees continued to prosecute claims for relief under false and misleading pretenses despite an automatic stay and various noticed and unnoticed changes in circumstances affecting

8

their underlying case. For example, Attorney Glenn Deadman filed a trial court pleading on December 8, 2014 in which he requested trial court sanctions for supposed discovery violations without disclosing the transfer to Torralba in pleadings or in open court. Deadman continued his nondisclosure in this Court on January 30, 2015 with pleadings alleging that it is "impossible for the rightful owner of the Property, Bravenec, to sell or market the same." Appellees' Motion at para. 10. Bravenec and Deadman were also mutually responsible for an earlier act of deceit in which Bravenec gave pleading testimony and Deadman filed pleadings and made statements in open court accusing Appellant of criminal contempt for the filing of a lis pendens notice in the docket of Case No. 2014-CI-07644. See generally, Court Reporter's Transcript For July 1, 2014.

The obscure and duplicitous nature of Bravenec and Deadman's conduct, as reflected both in pleadings and in open court, calls into question the trustworthiness and probative value of the briefing they proffered on January 30, 2014, especially in the context of the subject matter the Court expressly designated for the interlocutory appeal. According to the Court's decision upholding trial court sanctions in *Bravenec v. Flores*, Case No. 04-11-00444-CV (Tex. App. – San Antonio, 2013), Attorney Bravenec leveled baseless claims and malicious personal attacks against an opposing party and witness in an effort to deflect attention from his own wrong-doing in a foreclosure contest.

State authorities publicly reprimanded Attorney Deadman for deceitful conduct on August 30, 2003. See, *The Commission for Lawyer Discipline v. Glenn J. Deadman*, Misc. Docket No. 02 -9051, at p. 4, in Exhibit C of Appellant's Second Supplemental Appendix. In the latter proceeding, the commission found that

> Respondent made false statements to third parties, to include staff members with the Department of Defense Finance and Accounting Service, opposing counsel, and the ad litem for Hannah Flaherty ... The conduct of Respondent described above constitutes violations of the following Disciplinary Rules: ... Rule 4.01(a) -In the course of

9

representing a client a lawyer shall not knowingly make a false statement of material fact to a third person... Rule 8.04(a)(3) -A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

*Id.* The trial court clearly underestimated the risk that Bravenec and Deadman are repeating the same wrongful conduct that led authorities to sanctions them in other litigation. By all indications, Bravenec and Deadman willfully deceived the trial court process on July 9, 2014 with a collateral attack on Appellant's purchase money defense that conflated two separate transactions to make it appear that Appellant's rights were extinguished in 2006, and with false statements to create the impression that Appellant had blocked Bravenec from selling to One For Autism when in fact the contracting parties executed the sale to Torralba on July 8, 2014.

## STANDARD OF REVIEW

Appellant's fourth issue for interlocutory review invites an inquiry into whether the rules of construction call for judicial notice of fraud of the court issues in determining the sufficiency of dismissal orders designated for interlocutory appeal. Section 27.011 of the Act resolves the inquiry in the affirmative with the provision in subsection (a) that "[t]his chapter does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions," and in subsection (b) that "[t]his chapter shall be construed liberally to effectuate its purpose and intent fully." Id.

On its face, Section 27.011 (a) and (b) calls for a treatment of chain of title claims and fraud on the court issues that gives effect to rules of construction under Tex. Prop. Code Section 202.003(a) (requiring liberal construction of purpose and intent of restrictive covenants). See, *James, et al, v. Calkins,* Case No. 01-13-0018-CV (Tex. App. – Houston [1st Dist.] August 21, 2014) (enforcing TCPA coverage of lis pendens notice noting mootness doctrine in TCPA lis

10

pendens case), and *Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71; (Tex. App – 1st Dist. – Houston 2013) (crediting movant's tortious interference defense).

Questions of law about fraud on the court pertaining to jurisdiction are reviewed de novo. *State v. Holland, 221 S.W.3d 639, 642 (Tex. 2006). See also, Jones v. Beckman,* 2007 Cal. App. LEXIS 8326 (Cal. App., 2007) (rejecting unnoticed request for affirmative relief by non-movant as an extra-jurisdictional cross-appeal), and *Varian Medical Systems, Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) appealed in Super. Ct. No. CV780187 (Cal. 2005) (lack of trial court jurisdiction due to automatic stay). "Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders ... only if a statute explicitly provides appellate jurisdiction." *Thrivent Fin. for Lutherans v. Brock*, 251 S.W.3d 621, 622 (Tex.App.-Houston [1st Dist.] 2007, no pet.). "Texas courts strictly construe statutes authorizing interlocutory appeals because a statute authorizing an appeal from an interlocutory order is in derogation of the general rule that only final judgments are appealable." *Id.* "Jurisdiction over an interlocutory order when not expressly authorized . . . by statute is jurisdictional fundamental error." *N.Y. Underwriters, Id.* While the rule requiring strict construction of interlocutory appeals has not been read to preclude interlocutory review of Anti-SLAPP automatic stay issues, *Varian, Id.,* it arguably does preclude review of moot controversies, *James, Id.*, and unnoticed cross-appeals by non-moving parties who seek statutorily unauthorized affirmative relief. *Jones, Id.* Thus, the presentation of moot issues, or even live issues presented for the first time on appeal unsupported by a notice of cross appeal, a petition for extraordinary relief or proof of fundamental error, is generally improper.

The TCPA's provisions for interlocutory appeals imply authority to address fraud on the court through its core provisions to promote the First Amendment's right to petition the government, *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 513 (1972), and from

11

the American ideal that "the courthouse door is open to everyone," *NAACP v. Meese*, 615 F. Supp. 200, 205-06 (D.D.C. 1985). "It has never been the theory of free institutions that the citizen could say only what courts or legislatures might license him to say, or that his sentiments on any subject or concerning any person should be supervised before he could utter them. Nothing could be more odious, more violative or destructive of freedom, than a system of only licensed speech or licensed printing." *Ex parte Tucker*, 110 Tex. 335, 220 S.W. 75, 76 (1920). For that reason, the presumptive unconstitutionality of injunctions against future speech is especially compelling where fraud on the court issues are involved: "Given the inherently contextual nature of defamatory speech, even the most narrowly crafted of injunctions risks enjoining protected speech because the same statement made at a different time and in a different context may no longer be actionable. Untrue statements may later become true; unprivileged statements may later become privileged." *Kinney v. Barnes, Id.,* at p. 17.

Lastly, "[t]he TCPA treatment of [sanctions] is equivalent to that permitted for vexatious litigation tactics in Fed. R. Civ. P. 11 and 37,as well as 28 U.S.C. § 1927." *Williams v. Cordillera Communications, Inc.*, Case No. 2:13-CV-124 (S.D. Tex., November 24, 2014), at p. 2. In this regard, the TCPA grants the courts of appeals express authority to sanction a plaintiff's retaliatory conduct in derogation of a defendant's good faith attempt to exercise of the right to participate in government to the maximum extent permitted by law. *Farias v. Garza*, 426 S.W.3d 808 (Tex. App.—San Antonio 2014, pet. filed May 6, 2014) (crediting movant's first amendment defense). As this Court has previously enunciated, "[f]or the law to countenance ... abrupt and shameless shift[s] of positions would give prominence (and substance) to the image that lawyers will take any position, depending upon where the money lies, and that litigation is a

mere game and not a search for truth ... On balance, we conclude that the costs to the legal system ... outweigh its benefits..." Zuniga v. Grose, Locke, & Hebdon, Id. at p. 318.

## ARGUMENT AND AUTHORITIES ON APPELLANT'S FOURTH ISSUE FOR INTERLOCUTORY REVIEW

The gross insufficiency of the Appellees' justifications for their attacks on Appellant's exercise of the rights to lis pendens speech and to petition for enforcement of a purchase money lien is best shown by preponderant evidence of a presumptively unconstitutional cause of action to suppress future speech, *Markel V. World Flight, Inc.*, 938 S.W.2d 74 (Tex. App.-San Antonio 1996, no writ) (enforcing rule against prior restraints), by evidence of probable cause for fraud on the court by Bravenec in securing a post-stay gag order during his recent campaign for judicial office, and by briefing issues that Appellees either failed to timely raise, abandoned or deliberately misrepresented, and thus forfeited on appeal. *N.Y. Underwriters, Id.* Equally important, the conveyance to Torralba they sought to conceal demonstrates the failure to meet their TCPA burden to produce clear and specific evidence that Appellant interfered with the contracting parties' rights. Further, as parties opposing enforcement of the "separate transaction rule" of res judicata doctrine, Appellees' just as clearly failed to meet their TCPA burden to produce clear and specific evidence of a nexus between the purchase money transaction alleged by Appellant - in terms of time, place, origin and motivation – and the 2010 case they ask to enforce. *Anderson v. Law Firm of Shorty, Dooley & Hall*, (E.D. La. Feb 17, 2010) aff'd in 393 Fed. Appx. 214 (5th Cir. Aug. 26, 2010) (applying separate transaction rule to client dispute).

## Transactional And Evidentiary Errors

**7th Point of Error:** **The trial court's rulings on evidence relating to Appellant's beneficial interest in restrictive covenants from the purchase in 2003 and equitable servitudes litigated in bankruptcy court in 2012, were insufficient due to departures from Tex. Prop. Code 202.003(a).**

The trial court erred by sustaining Appellees' relevance objection to the concluding part of Appellant's line of cross-examination showing that Bravenec did not know what was meant by the terminology "third party purchase money lien claim." Appellant produced clear and specific evidence to support allegations about time, place, original and motivation for the purchase money transaction in 2003, to establish that the fact situation here is analogous to the one in *Rose v. Rothrock*, Case No. 08-3884 (E.D. Penn, 2009), where the lis pendens notice of an interest holder of an executory contract was upheld.[4] Appellees offer no evidence to affirm or deny the particulars of the separate transaction defense other than Bravenec's testimony that he did not what was meant by the term, third party purchase money lien interest, and that he could not offer a citation to the Court to show where the text of the judgment in the 2010 case that supported his conclusions about its res judicata effect. Bravenec's testimony was relevant to establish that Appellees' offer no evidence with which to dispute the applicability of *Rose, Id.*, and that their reference to only a single transaction is accounted for by a lack of hornbook knowledge on creditor rights, whether actual or pretended, and that this factor directly accounts for his view that Appellant had filed lis pendens notices with no legally enforceable interest in the subject property to support his claim. Bravenec's testimony clearly shows that Appellees failed to meet their burden with clear and specific evidence on the particulars of time, place, origin and motivation as needed to rebut Appellant's invocation of the separate transaction rule.

---

[4] As shown by document referenced in the "Court Reporters Master Index" filed on December 4, 2014, Defendant's Exhibit 7 establishes the time that the purchase money transaction occurred. Exhibit 8 establishes that place the purchase money issue was litigated was in the bankruptcy court as opposed to the federal district court. The supporting attachments to Exhibit 7 establish conclusively that Appellant was the origin of the purchase money that was advanced to Moroco Ventures, LLC, and that the motivation for the transaction was to enable Moroco to execute a purchase from Roy Ramspeck, et al. Defendant's Exhibits also establish the time, place, origin, and motivation for the separate and collateral foreclosure transaction in the 2010 case. See generally, Defendant's Exhibits 2, 4 and 5.

14

**8th Point of Error. The insufficiency of the trial court's rulings on evidence relevant to the foreclosure transaction litigated in federal district court in the 2010 case caused undue prejudice to Appellant's case.**

The trial court erred at least twice in rendering evidentiary rulings related to Appellees' reliance on the 2010 case as the law of the case. Specifically, the trial court overruled Appellant's objections to testimony suggesting that the trial court was obligated to give res judicata effect to the 2010 as an adverse ruling on purchase money issues. Court Reporter's Transcription For July 9, 2014 at p. 32. The trial court later sustained objections to cross-examination by Appellant raising questions about the impartiality of the federal court process arising among other things from relationships between Appellee Bravenec's father, and the presiding federal court judge, that the line of questioning "has nothing to with what my decision is today," Court Reporter's Transcription For July 9, 2014 at p. 62. Although Appellees also produced testimony and documentary evidence on time, place, origin and motivation factors to prove the transaction from the 2010 case that supports their lis pendens controversy, there is no material disagreement about the meaning of the evidence except that Appellees' evidence substantiates a single transaction from 2006 litigated in the 2010 case, and attempts support a fact theory analogous to the one in *Wallace v. Kelley*, 2007 U.S. Dist. LEXIS 56472 (D. Neb. Aug. 1, 2007). In contrast, Appellant's evidence establishes two transactions, one in 2006 and one relating back to the acquisition of the subject property in 2003. The trial court's treatment of evidence conflating the two mistakenly suggests that authority in *Wallace* applies, and thereby misconstrues that covenants that run with the land in favor of purchase money lien interests.

## Jurisdictional And Constitutional Errors

**9th Point Of Error:  The gag order findings are legally insufficient due to the non-justiciability and mootness the subject matter due to jurisdictional fundamental errors.**

15

Applying *N.Y. Underwriters, Id.*, an expedited dismissal is justified by Sec. 27.011 to reflect changes in jurisdictional circumstances that limit the Court's authority to conduct an interlocutory appeal. *Cf., Smith v. O'Neill*, 813 S.W.2d 501, 502 (Tex.1991); *City of Seagoville v. Smith*, 695 S.W.2d 288, 289 (Tex.App.-Dallas 1985, no writ). Here, as in *Jones*, a California Anti-SLAPP case dismissing an unnoticed cross-appeal in opposition to a lis pendens filing, the briefing proffered in the Appellee's motion for extension of time rests implicitly on changed circumstances that arose when the Appellee replaced their tortious interference theory on July 8, 2014 with a de novo claim for fraud that requires an affirmative grant of extraordinary relief before it can be properly presented to the Court. *Desai v. Reliance Mach. Works, Inc.,* 813 S.W.2d 640, 641 (Tex.App.-Houston [14th Dist.] 1991, no writ). Alternatively, the actions taken by the trial court with a complete lack of jurisdiction vitiate the original controversy and render it abstract. Here as in *James*, where certain appellees non-suited their claims, the transfer of the subject property deprived the trial court of jurisdiction over the parties except for applying sanctions. *Id.* Here as in *Markel, Id.,* the presumptive unconstitutionality of the Appellees' legal action to suppress future lis pendens speech deprived subject matter jurisdiction. Lastly, here as in *Varian*, the trial court lacked capacity to enter a gag order after the on-set of an automatic stay.

Arguably, Appellees' reliance on unnoticed changes in position also warrants the summary forfeiture of their claims for mootness. Their prosecution of gag order relief on tortious interference grounds, after amending their original petition to abandon that claim, invites a conservative reading of the jurisdictional requirements of Tex. Civ. Prac. & Rem Code Section 51.014(a) in *pari materia* with the mandate for liberal construction in Section 27.011(b), and with the guiding principle that "[t]he protection of [The Texas] anti-SLAPP statute is a substantive immunity from suit." *Batzel v. Smith, Id.* Enforcement of immunity principles is

clearly justified because the case they offer to prosecute stems – not from organic issues the Court has designated for review in accordance with TCPA standards – but from false testimony and prima facie fraud on the court by Bravenec and Deadman on July 8, 2014 and July 9, 2014 in instigating unconstitutional gag order findings on false pretenses and in violation of an automatic stay. *Varian, Id.* Because Appellees depart from legal and factual theories in their own live pleadings of record, they are not entitled to the benefit of the Court's appellate jurisdiction to aid them with affirmative relief unsupported by a timely notice of cross appeal or the filing of meritorious petition for extraordinary relief. *Jones, Id.*

**10ᵗʰ Point Of Error:** **The dismissal denial order and gag order are insufficient due to fundamental errors involving unlawful prior restraints in derogation of constitutionally and statutorily protected rights to free speech and to petition.**

A gag order in civil judicial proceedings will withstand constitutional scrutiny under Texas law only where there are specific findings supported by evidence that (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm. *Markel, Id.* Here, Appellees procured a gag order from the trial court on July 17, 2014 that is presumptively unconstitutional according to the criteria applied in *Markel, Id.,* was moot for voidness from its inception, and was further mooted by changed circumstances including the transfer of the subject property without the benefit of a final order to remove clouds from title, *James, Id.*

Regarding the first element, Appellant's core objection to the gag order under *Markel* is that the trial court relied on inherently suspect evidentiary representations by Appellees in giving res judicata effect to the judgment in *Martin v. Grehn,* Case No. 14-50070 (5th Cir. 2013) (order denying rehearing entered December 4, 2014) as an adverse ruling on matters that remain under on-going litigation in *Martin v. Bravenec,* Case No. 14-50093 (5th Cir.). On November 24, 2014,

17

the U.S. Court of Appeals ordered that Appellant's motion to strike Appellee federal appellate brief be carried with the case, thus signifying that *Martin v. Grehn* is not final with respect to the matters that remain under collateral review in *Martin v. Bravenec,* et al. In short, the trial court's gag order was addressed to a foreclosure transaction readily distinguishable from the purchase money transaction that is documented in Appellant's 2014 lis pendens notices. As further set forth Appellant's First And Second Briefing Issues and in his First, Second, Third, And Fourth Points of Error, the failure to meet the first element is further underscored by the fact that there is no independent cause of action under Texas law to enjoin lis pendens speech as Appellees anecdotally presumed. Thus, there was no potential risk of a disruption of the juridical process.

Regarding the second element, the gag order was clearly not the least restrictive means to address Appellees contentions about the need for injunctive relief based on lis pendens notices expunged in the past in light of public records showing that Bravenec recorded a conveyance to Torralba on July 8, 2014 and considering the alternative of remedy of requesting monetary damages: Considering Bravenec's recantation on the issue of Appellant's financial condition, the least restrictive alternative to avoid undue disruption was to allow joinder so all the interested parties could be heard on protective orders relief as the standards apply. *Markel, Id.*

## Fundamental Public Policy Errors

**11th Point of Error:** **The dismissal denial order and gag order are legally insufficient due to bad faith conduct for an improper purpose by Attorneys Bravenec and Deadman.**

It is well settled as a matter of public policy that bad faith in the judicial context involves than bad judgment or negligence, but is the conscious doing of a wrong for dishonest, discriminatory or malicious purpose, and improper motive is an essential element of the claim. *See, Bravenec v. Flores, Id.* Here, discrepancies between deed and docket records imply that Attorneys Bravenec and Deadman acted consciously to pass off a special warranty deed on

18

Bravenec's transferee in lieu of a general warranty deed, and that their motive was to deprive the value of compensation owed to Appellant as a beneficiary of restrictive covenants and equitable servitudes that run with the land. Given the duplicity between his representations to the trial court in pleadings filed on July 8, 2014, and the representations he made in pleadings on January 30, 2015 to secure extensions relief, Bravenec's posture in this matter was dishonest towards Torralba as the purchaser, and discriminatory from a due process standpoint toward Appellant. It was also malicious *per se* for Deadman to prosecute a gag order on a tortious interference theory on July 9, 2014 the day after amending Appellees' petition on July 8, 2014 to abandon that claim, since those acts deprive Appellant of meaningful notice of the underlying controversy and create an abstractions which can only serve to multiply and distort the overall litigation. As a person accused of wrongdoing, therefore, Appellant asserts a Sixth Amendment right to confront his accuser, Deadman, about the contradictory implications of his disciplinary history and his present dual role as an attorney and witness for Bravenec. Tex. Disciplinary Rules Prof'l Conduct R. 3.08(a); and *In re Brittingham*, 2010 WL 1608885 (Tex. App., 2010, orig. pet.).

**12th Point of Error: The existence of a substantial and material fact issue about fraud on the court, due to corrupt abuse of judicial process, indicates that Appellees' trial court showing to meet their burden under the TCPA's clear and specific evidence standard, or to demonstrate the applicability of exemptions, was grossly insufficient.**

A corrupt abuse of judicial process by attorneys differs from mere bad faith conduct by a litigant for an improper purpose, and is cognizable as a species of fraud on the court, where attorneys engage in conduct involving extrinsic or intrinsic fraud that defiles a court's internal capacity to administer justice in an orderly manner. *Navarro v Browning*, 826 F.2d 335 (5th Cir., 1987).[5] The rendition of perjurous testimony on a matter extrinsic to the litigation qualifies as a

---

[5]    Not unlike the situation here, the *Navarro* court noted that "… for various reasons [the appellant] has never had consideration, by either the federal or state courts, of the merits of his colorable claim that the state court judgment resulted from the corrupt abuse of the judicial process." Id.  The court then

form of extrinsic fraud, and an attorney's failure to disclose a material jurisdictional fact

qualifies as intrinsic fraud. [6] TCPA policy goals were defiled with colorable fraud on the court

here from Bravenec's testimony alleging inability to complete a sale he already executed, and

Deadman's false statement in open court that One For Autism was the prospective purchaser.[7]

## PRAYER FOR EXPEDITED RELIEF

Appellant requests (1) reversal of the dismissal denial order and dismissal gag order

appeal as moot; (2) render an expedited judgment of dismissal with prejudice to the Appellees

and their successors in interest; and (3) award sanctions taking due account of past disciplinary

actions against Bravenec and Deadman to deter a repetition of egregious TCPA violations.

---

proceeded to hold that "extrinsic fraud, that is, fraud that was not the subject of the litigation, that infects the actual judicial process, is grounds to set aside a judgment as procured by fraud ... [and that Supreme Court precedent also] allows a judgment to be attacked on the basis of intrinsic fraud that results from corrupt conduct by officers of the court." Id.

[6] Texas law holds that a person commits perjury under the Texas Penal Code if, with intent to deceive and with knowledge of the statement's meaning when: (1) he makes a false statement under oath or swears to the truth of a false statement previously made; and (2) the statement is required or authorized by law to be made under oath. Penal Code s 37.02. An affiant commits aggravated perjury if, in addition, the false statement: (1) is made during or in connection with an official proceeding; and (2) is material. Penal Code Section 37.03. The comments to Rule 3.03 of Texas Disciplinary Rules of Professional Conduct are equally relevant: "An advocate is responsible for pleadings and other documents prepared for litigation, but is usually not required to have personal knowledge of matters asserted therein ... However, an assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or a representation of fact in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation. The obligation prescribed in Rule 1.02(c) not to ... assist the client in committing a fraud applies in litigation."

[7] According to TCPA standards, the mere existence of fraud on the court issues such as these justifies dismissal and extraordinary writ relief allowing Appellant to reopen Case No. 04-14-00841-CV (Exhibit E) so the original lien grant to Bravenec can be disposed as a legal service expenditure. For remedial purposes, Appellant computes the value of restrictive covenants and equitable servitudes in controversy at an amount equal to the value of his purchase money investment in 2003 of $135,000 plus the value of the bridge loan commitment in the amount of $296,000 in Exhibit F. *See Archer v. Blakemore*, 367 S.W.2d 402, (Tex. App. Austin -1963) (quiet title case involving client request to cancel deed used for in-kind payment). Zuniga authorizes a remedy for an assignment to a law firm of a chose in action on a client's legal malpractice claim, the attorney client relationship with McKnight and Bravenec which enabled them to acquire a second lien interest from Appellant's former corporate estate, and later a first lien interest from an third party, warrants the immunity from the entire transaction.

20

WHEREFORE, PREMISES CONSIDERED, Appellant prays that the Court grant relief in all things, for such other relief both in law and in equity as he may be justly entitled. [8]

Dated: February 19, 2015

Respectfully Submitted,

Rowland J. Martin
951 Lombrano
San Antonio, Tx 78207
(210) 323-3849

## CERTIFICATE OF SERVICE

I mailed a copy of this "Appellant's Advisory On Fraud On The Court, Further Notice of Briefing Amendments, and Second Supplemental Appendix to Glenn Deadman and Torralba Properties, LLC on February 19, 2015.

Rowland J. Martin

---

[8] The other live defect in Bravenec's chain of title relates back to his post-petition foreclosure of a bankruptcy case, under color of first lien note of which he did not own at the time of the foreclosure, while still appearing as Appellant's attorney of record on the docket of Probate Case 2001-PC-1263 until march 19, 2014. See, "Administrator's Response To Motion To Expunge" in Defendant's Exhibit 5 in the Court Reporter's Master Index dated December 4, 2014; *cf., Gulf Coast Investment Corp. v. Brown*, 821 S.W.2d 159 (Tex. 1991) (malpractice claim due to wrongful foreclosure tolled by suit in a suit litigation). In requesting contingent leave to reopen and consolidate his original petition for extraordinary relief, see Order in Case No., 04-14-00841-CV in Exhibit E of Appellant's Second Supplemental Appendix, Appellant attaches significance to language Tex. Civ. Prac. & Rem Code Sec. 27.005 providing that the moving party may establish "by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim," and related language in Section 27.008(b) which authorizes the courts of appeals to expedite "an appeal or other writ, whether interlocutory or not ..." Sec. 27.007 further provides that a court can rule on issues tending to establish "whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose, including to harass or to cause unnecessary delay or to increase the cost of litigation." In *Jennings v. Wallbuilder Presentations, Inc.,* 378 S.W.3d 519, 527 (Tex. App.—Ft. Worth 2012, pet. filed), the court of appeals found that "[i]f no interlocutory appeal is available when the trial court expressly rules on a motion to dismiss by signing an order then the phrase 'from a trial court order on a motion to dismiss' appearing after the phrase 'whether interlocutory or not' is rendered meaningless," and that this factor indicated that it "must carefully analyze the costs and benefits of granting mandamus relief," and "whether mandamus review will spare litigants and the public the time and money wasted 'enduring eventual reversal of improperly conducted proceedings.'" *Id.* Appellant respectfully submits that the preponderance of evidence supports his estoppel by deed defenses, and that if necessary, reopening his petition for extraordinary relief for consolidation with the instant interlocutory appeal will aid prospective enforcement of TCPA public policy objectives.

21

| | | |
|---|---|---|
| ROWLAND J. MARTIN | ) | TEXAS COURT OF APPEALS |
| Appellant | ) | |
| | ) | |
| v. | ) | FOR THE FOURTH DISTRICT |
| | ) | |
| EDWARD BRAVENEC AND 1216 | ) | |
| WEST AVE. INC. | ) | |
| Appellees | ) | BEXAR COUNTY, TEXAS |

## APPELLANT'S SECOND SUPPLEMENTAL APPENDIX

A     First And Final Account Of Attorney John Tutt in *In re Moroco Ventures, LLC*, Chapter 11 Bankruptcy Case No. 06-50329.

B     Deed From Edward Bravenec To Torralba Properties, LLC dated July 8, 2014.

C.     Document From *The Commission for Lawyer Discipline v. Glenn J. Deadman*, Misc. Docket No. 02 -9051.

D.     Court Reporters Transcript From Hearings in Case No. 2014-CI-07644 On May 23, 2014.

E.     Order and Memorandum Opinion in *In re Rowland Martin*, Case No. 04-14-00481-CV.

F.     Commitment Letter To Rowland Martin For $296,000 Secured Real Estate Loan



United States Bankruptcy Court
Western District of Texas
San Antonio Division

In re:

MOROCO VENTURES, LLC

DEBTOR

Case No. 06-50829 RBK

Chapter 11

## COVER SHEET FOR FIRST AND FINAL APPLICATION FOR ALLOWANCE OF LEGAL FEES AND EXPENSES TO JOHN M TUTT, ATTORNEY FOR MOROCO VENTURES, LLC

1.      Applicant:                        John M. Tutt
                                          10010 San Pedro, Suite 660
                                          San Antonio, TX 78216-3804

2.      First and Final Application

3.      Client:                           Moroco Ventures, LLC
                                          P O Box 5279
                                          San Antonio, TX 78201-5279

4.      Time Period Covered:             5/01/06 through 11/21/06

5.      Total Amount Requested:          $15,881.77

                (A)     Fees:            $15,760.00
                (B)     Expenses:        $121.77

United States Bankruptcy Court
Western District of Texas
San Antonio Division

In re:

MOROCO VENTURES, LLC

DEBTOR

Case No. 06-50829 RBK

Chapter 11

## SUMMARY FOR FIRST AND FINAL APPLICATION FOR ALLOWANCE OF LEGAL FEES AND EXPENSES TO JOHN M TUTT, ATTORNEY FOR MOROCO VENTURES, LLC

I.      Client: Moroco Ventures, LLC

II.     Requesting Applicant:   John M Tutt, Attorney for Moroco Ventures, LLC

III.    Total Amount of Fees and Costs Requested:  $15,881.77

     a.      Fees:          $15,760.00

     b.      Expenses:      $121.77

     c.      Pre-petition retainer:  $10,000.00 which remains as a retainer

     d.      Time period covered: 5/01/06 through 11/21/06

IV.     Breakout of Current Application:

     A.      John M. Tutt spent 78.8 hours @ $250.00 per hour = $15,760.00
          [Adjusted downward for no charge time; Minimum Fee Increments are .1 hours]

     B.      Expenses:

          1.      Parking expense      $26.00
          2.      Postage expense      $64.77
          3.      Filing fees          $26.00
          Total Expense         $121.77

     C.      Amount allocated for preparation of this fee application: $500.00 (2hours)

V.      Prior Applications:

     None.

VI.     Other Co-Equal or Administrative Claimants in Case:

Name                                Party Represented

U S Trustee (quarterly fees)


VII.    Results Obtained:

The going concern value of the Debtor deteriorated which Debtor pursued its reorganization efforts, due to continuing interference from certain creditors with Debtor's business activities. Post-petition, the Debtor's business showed improvement initially and then deteriorated and ultimately lost its primary asset. The Debtor's Disclosure Statement and Plan of Reorganization was filed but was withdrawn after the primary asset was foreclosed in October 2006.


LAW OFFICE OF JOHN M TUTT
10010 San Pedro, Suite 660
San Antonio, TX 78216-3804
(210) 366-9676
(210) 366-0412 fax



John M Tutt
SBOT: 20347000
jtutt@quixnet.net

ATTORNEY FOR DEBTOR


CERTIFICATE OF SERVICE

I certify that on November 21, 2006, a true and correct copy of the above and foregoing Summary for First and Final Application for Allowance of Fees and Expenses to John M Tutt, Attorney for Debtor, has been transmitted by first class mail, to the parties on the attached service list.



John M Tutt

# B

STC GF# 1402942377

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.

# WARRANTY DEED WITH VENDOR'S LIEN

STATE OF TEXAS     §
          §   KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF BEXAR   §

  THAT, EDWARD L. BRAVENEC, hereinafter called Grantor (whether one or more), for and in consideration of the sum of TEN AND NO/100 DOLLARS and other good and valuable considerations in hand paid by TORRALBA PROPERTIES, LLC, hereinafter called Grantee (whether one or more), whose mailing address is:_____18507 Canoe Brook_____ · San Antonio, TX 78258_____, the receipt of which is hereby acknowledged, and for the further consideration of the sum of $239,200.00, to Grantor in hand paid by PROSPERITY BANK, which amount is advanced at the special instance and request of the Grantee herein, and as evidence thereof, the Grantee has executed and delivered one certain promissory note of even date herewith for the sum of TWO HUNDRED THIRTY NINE THOUSAND TWO HUNDRED AND NO/100 DOLLARS ($239,200.00), payable to the order of PROSPERITY BANK, whose mailing address is as set forth in the hereinafter mentioned Deed of Trust, bearing interest and payable as in said note provided; said note containing the usual provisions for attorney's fees and acceleration of maturity in case of default, and being secured by Vendor's Lien herein and hereby expressly retained in favor of the Grantor, on the property hereinafter described, and as further security for the payment of said note, the SUPERIOR TITLE and VENDOR'S LIEN to said property are hereby transferred and conveyed to PROSPERITY BANK without recourse against Grantor, said note being also secured by Deed of Trust of even date herewith to DAVID ZALMAN, Trustee; has GRANTED, SOLD and CONVEYED and by these presents Grantor does hereby GRANT, SELL and CONVEY unto Grantee herein, the following described real property together with all improvements thereon situated in Bexar County, Texas, described as follows, to-wit:

  Lots 1, 2 and 3, Block 50, New City Block 8806, LOS ANGELES HEIGHTS ADDITION, City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 105, Pages 284-286, Deed and Plat Records of Bexar County, Texas, SAVE AND EXCEPT 0.00049 of an acre, being 21.51 square feet out of Lot 1, as described by Deed to the City of San Antonio recorded in Volume 5180, Page 1873, Real Property Records of Bexar County, Texas; and

  Lots 23, 24 and 25, Block 50, New City Block 8806, LOS ANGELES HEIGHTS SUBDIVISION, City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Volume 8100, Page 97, Deed and Plat Records of Bexar County, Texas.

  TO HAVE AND TO HOLD the above described premises, together with all and singular the rights and appurtenances thereunto in anywise belonging unto the said Grantee herein, Grantee's heirs, successors and/or assigns forever. And Grantor does hereby bind Grantor, Grantor's heirs, successors and/or assigns, TO WARRANT and FOREVER DEFEND all and singular the said premises unto the Grantee herein, Grantee's heirs, successors and/or assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

  Grantee assumes taxes for the current year on the property hereby conveyed.

  This conveyance and the warranties of title given herein are made subject to any and all restrictions, easements, setback lines, covenants, conditions and reservations, of record affecting the property herein conveyed.

EXECUTED ON THE FOLLOWING DATE: ___JUL 0 8 2014___.


_____
EDWARD L. BRAVENEC

(ACKNOWLEDGEMENT)

STATE OF TEXAS          §
COUNTY OF BEXAR         §

This instrument was ACKNOWLEDGED before me, on this the __8__ day of
_____, 20 _11_, by EDWARD L. BRAVENEC.


_____
Notary Public, State of Texas

AFTER RECORDING RETURN TO:

Torralba Properties, LLC
18507 Canoe Brook,
San Antonio, Texas 78258

PREPARED IN THE OFFICE OF:
WEST & WEST ATTORNEYS, P.C.
2929 Mossrock, Suite 204
San Antonio, Texas 78230

# C

# ORDER OF THE SUPREME COURT OF TEXAS

### Misc. Docket No. 02 - 9051

Appointment of a District Judge to Preside
in a State Bar Disciplinary Action

The Supreme Court of Texas hereby appoints the Honorable Jeff K. Work, Judge of the 189th District Court of Harris County, Texas, to preside in the Disciplinary Action styled

**The Commission for Lawyer Discipline v. Glen J. Deadman**

filed in the District Court of Bexar County, Texas.

The Clerk of the Supreme Court shall promptly forward to the District Clerk of Bexar County, Texas, a copy of the Disciplinary Petition and this Order for filing pursuant to Rule 3.03, Texas Rules of Disciplinary Procedure.

As ordered by the Supreme Court of Texas, in chambers,

With the Seal thereof affixed at the City Of Austin, this 28th day of February, 2002.

JOHN T. ADAMS, CLERK
SUPREME COURT OF TEXAS

This assignment, made by Misc. Docket No. 02-9051 is also an assignment by the Chief Justice of the Supreme Court pursuant to Texas Government Code §74.057.

Signed this 2C day of February, 2002.

Thomas R. Phillips
Chief Justice

No. _____

| COMMISSION FOR LAWYER | § | IN THE DISTRICT COURT OF |
| DISCIPLINE | § | |
| | § | |
| V. | § | BEXAR COUNTY, TEXAS |
| | § | |
| | § | |
| GLENN J. DEADMAN | § | _____ JUDICIAL DISTRICT |

## ORIGINAL DISCIPLINARY PETITION

**TO THE HONORABLE JUDGE OF SAID COURT:**

Comes now, Petitioner, COMMISSION FOR LAWYER DISCIPLINE, a committee of the State Bar of Texas, complaining of Respondent, GLENN J. DEADMAN, and in support thereof would respectfully show the Court the following:

### Parties

Petitioner is the COMMISSION FOR LAWYER DISCIPLINE, a committee of the State Bar of Texas. Respondent, GLENN J. DEADMAN, State Bar Number 00785559, was, at the time the following alleged acts of professional misconduct occurred, an attorney licensed to practice law in the State of Texas and a member of the State Bar of Texas. Respondent may be served with process at, 309 South Main Avenue, San Antonio, Bexar County, Texas 78204, his usual place of business.

### Venue

At the time the alleged professional misconduct occurred, Respondent maintained a law office in San Antonio, Bexar County, Texas. The alleged acts of professional misconduct occurred in whole or in part in Bexar County, Texas. Accordingly, pursuant to Texas Rules of Disciplinary Procedure 3.03, venue is proper in Bexar County, Texas.

## Discovery Level Designation

### 1.

Pursuant to Tex.R.Civ.P. 190.1, Petitioner designates that discovery in this action should proceed pursuant to Level 2 (Tex.R.Civ.P. 190.3).

### Professional Misconduct

### 2.

Petitioner brings this disciplinary action pursuant to State Bar Act, Tex. Gov't. Code Ann., Sec. 81.001, et seq. (Vernon 1988), the Texas Disciplinary Rules of Professional Conduct and the Texas Rules of Disciplinary Procedure. The complaint which forms the basis of this disciplinary action was filed with the State Bar of Texas by Brian D. and Mary K. Flaherty on July 21, 2000. The acts and conduct of Respondent, as hereinafter alleged, constitute professional misconduct.

### 3.

On August 30, 1996, Brian D. and Mary K. Flaherty signed a twenty percent (20%) contingent fee contract with the Law Offices of Samuel B. Katz. Respondent later accepted the Flaherty's case as a referral from Judge Katz. The contract entered into by the Flaherty's and the Law Offices of Samuel B. Katz, as witnessed by Glenn J. Deadman, was "to represent Brian and Mary Flaherty and their Minor Child, Hannah Flaherty for any and all injuries sustained from her stepping on an in-ground barbecue pit and includes any and all possible causes of action stemming from same including actions taken by USAA."

### 4.

The Case was settled for $265,000.00 and the funds distributed by friendly suit on December 16, 1997. Of the total settlement, respondent was paid $53,000.00 in attorney fees and

$1,256.48 for costs incurred. The Judgment further ordered $94,968.75 be placed in the registry of the Court to be held until the court is notified of the total of the medical lien sought by Brooke Army Medical Center (BAMC) for the medical treatment of the Minor Child, Hannah Flaherty. The Judgment ordered that upon demand by BAMC said bill is to be paid, in an amount not to exceed $94,968.75. If there are any funds left after the payment of the BAMC bill the funds are to be distributed seventy-five percent (75%) to the benefit of Hannah Flaherty and the lesser of twenty-five percent (25%) or $10,000.00 to Brian and Mary Flaherty.

## 5.

BAMC refused to compromise their lien for medical treatment and sought to collect from the Flaherty's seizing their tax refund. Respondent refused to assist in the negotiation of a reduction in the lien unless his clients signed a new contingent fee contract for thirty-three percent (33%) of the entire $94,968.75 deposited with the court for the medical lien. Brian Flaherty's signature appears on a new contingency contract dated December 16, 1999. Respondent negotiated a settlement of the lien for $47,484.38 on March 20, 2000. Respondent retained $31,339.69 as attorney fees.

## 6.

Respondent had an obligation to continue negotiating with BAMC for a reduction of the medical lien. Respondent's insisting on a second contingency contract to continue to negotiate the reduction of the BAMC lien resulted in Respondent collecting an illegal or unconscionable fee. The second contingency fee taken out of the money ordered deposited into the registry of the court amounted to the taking of two contingency fees from the same settlement funds covered

under the original contingency fee contract covering all possible causes of action arising from the injury to Hannah Flaherty.

7.

During the course of the representation, Respondent made false statements to third parties, to include staff members with the Department of Defense Finance and Accounting Service, opposing counsel, and the ad litem for Hannah Flaherty. Respondent indicated that a settlement was reached in the underlying case in December 1997 at least partly on the basis that Respondent reduced his fees by fifty percent (50%). Respondent, in fact, received the full contingency fee of twenty percent (20%) as stated in the original contract of August 30, 1996.

8.

The conduct of Respondent described above constitutes violations of the following Disciplinary Rules:

Rule 1.04(a) – A lawyer shall not enter into an arrangement for, charge, or collect an illegal fee or unconscionable fee.

Rule 4.01(a) – In the course of representing a client a lawyer shall not knowingly make a false statement of material fact to a third person.

Rule 8.04(a)(3) – A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

**PRAYER**

WHEREFORE, PREMISES CONSIDERED, Petitioner prays that a judgment of professional misconduct be entered against Respondent imposing an appropriate sanction as the facts shall warrant and that Petitioner have such other relief to which it is entitled, including costs of court, litigation expenses and attorney's fees.



# The Supreme Court of Texas

CHIEF JUSTICE
  THOMAS R. PHILLIPS

JUSTICES
  NATHAN L. HECHT
  CRAIG T. ENOCH
  PRISCILLA R. OWEN
  JAMES A. BAKER
  DEBORAH G. HANKINSON
  HARRIET O'NEILL
  WALLACE B. JEFFERSON
  XAVIER RODRIGUEZ

CLERK
  JOHN T. ADAMS

EXECUTIVE ASSISTANT
  WILLIAM L. WILLIS

DEPUTY EXECUTIVE ASST
  JIM HUTCHESON

ADMINISTRATIVE ASSISTANT
  NADINE SCHNEIDER

201 West 14th Street    Post Office Box 12248    Austin TX 78711
Telephone: 512/463-1312    ·· Facsimile: 512/463-1365

**MAR 0 7 2002**

Mr. Robert E. Kaszczuk
Assistant Disciplinary Counsel, State Bar of Texas
425 Soledad, Suite 300
San Antonio, Texas 78205

Mr. Glenn J. Deadman
309 South Main Avenue
San Antonio, Texas 78204

Dear Mr. Kaszczuk and Mr. Deadman:

Pursuant to Rule 3.02 of the Texas Rules of Disciplinary Procedure, I hereby notify you that the Supreme Court of Texas has appointed the Honorable Jeff K. Work, Judge of the 189th District Court, Houston, Texas to preside in

*Commission for Lawyer Discipline v. Glenn J. Deadman*

Sincerely,

**SIGNED**

John T. Adams
Clerk



# The Supreme Court of Texas

CHIEF JUSTICE
  THOMAS R. PHILLIPS

JUSTICES
  NATHAN L. HECHT
  CRAIG T. ENOCH
  PRISCILLA R. OWEN
  JAMES A. BAKER
  DEBORAH G. HANKINSON
  HARRIET O'NEILL
  WALLACE B. JEFFERSON
  XAVIER RODRIGUEZ

201 West 14th Street    Post Office Box 12248    Austin TX 78711
Telephone: 512/463-1312        Facsimile: 512/463-1365

CLERK
  JOHN T. ADAMS

EXECUTIVE ASSISTANT
  WILLIAM L. WILLIS

DEPUTY EXECUTIVE ASST
  JIM HUTCHESON

ADMINISTRATIVE ASSISTANT
  NADINE SCHNEIDER

MAR 0 7 2002

The Honorable Reagan Greer
District Clerk of Bexar County
100 Dolorosa Street
San Antonio, Texas 78205-1205

Dear Mr. Greer:

Pursuant to Rule 3.03 of the Texas Rules of Disciplinary Procedure, I am sending for filing State Bar of Texas Disciplinary Action styled: *The Commission for Lawyer Discipline v. Glenn J. Deadman,* and a copy of the Supreme Court's order appointing the Honorable Jeff K. Work, Judge of the 189th District Court, Houston, Texas, to preside in this Disciplinary Action.

Sincerely,

**SIGNED**

John T. Adams
Clerk

cc:    Honorable Jeff K. Work
       Mr. Robert E. Kaszczuk
       Mr. Glenn J. Deadman



# The Supreme Court of Texas

CHIEF JUSTICE
 THOMAS R. PHILLIPS

JUSTICES
 NATHAN L. HECHT
 CRAIG T. ENOCH
 PRISCILLA R. OWEN
 JAMES A. BAKER
 DEBORAH G. HANKINSON
 HARRIET O'NEILL
 WALLACE B. JEFFERSON
 XAVIER RODRIGUEZ

201 West 14th Street    Post Office Box 12248    Austin TX 78711
Telephone: 512/463-1312    Facsimile: 512/463-1365

MAR 0 7 2002

CLERK
 JOHN T. ADAMS

EXECUTIVE ASSISTANT
 WILLIAM L. WILLIS

DEPUTY EXECUTIVE ASST
 JIM HUTCHESON

ADMINISTRATIVE ASSISTANT
 NADINE SCHNEIDER

Honorable Jeff K. Work
Judge, 189th District Court
610 Civil Courts Building
301 Fannin Street
Houston, Texas 77002

Dear Judge Work:

We enclose for your information a copy of the order of assignment, a copy of the Disciplinary Action, a copy of the notification letter to Mr. Deadman and Mr. Kaszczuk, and a copy of the letter to the District Clerk of Bexar County.

It is recommended that, six to eight weeks after receipt of this letter, you or your coordinator contact the Bexar County Administrative Office (956-335-2300) to find out the district court to which this disciplinary case has been assigned, names and addresses of counsel, etc. We then recommend that, either before or immediately after you set the case for trial, you contact the Presiding Judge of the Administrative Judicial Region into which you have been assigned (210-769-3519) to reserve a courtroom, obtain a court reporter, obtain claims forms for your expenses incident to presiding over this disciplinary case.

Sincerely,

**SIGNED**

John T. Adams
Clerk

# STATE BAR OF TEXAS



Office of the Chief Disciplinary Counsel

CERTIFIED MAIL
RETURN RECEIPT REQUESTED
#7099 3220 0000 0580 7266

January 4, 2002

John T. Adams, Clerk
Supreme Court of Texas
P.O. Box 12248
Austin, Texas 78711

      RE:    Commission for Lawyer Discipline v. Glenn J. Deadman

Dear Mr. Adams:

Enclosed please find an original and three (3) copies of a Disciplinary Petition being filed by the Commission for Lawyer Discipline against Glenn J. Deadman. Mr. Deadman has designated Bexar County as his principal place of practice. Request is hereby made that the Court appoint an active District Judge who does not reside in the Administrative Judicial Region in which Respondent resides to preside in this case. Upon appointment, request is made that you notify the Respondent at the address shown below and the undersigned of the identity and address of the judge assigned:

> Glenn J. Deadman
> 309 South Main Avenue
> San Antonio, Texas 78204

As a practical matter, I would respectfully suggest that you inquire with the judge to be appointed as to whether he or she will be able to comply with the 180 day deadline by which the case must be set for trial as set forth in Section 3.07 of the Texas Rules of Disciplinary Procedure. If not, I would respectfully request that an alternate appointment be made.

Once a trial judge has been appointed, please forward the original and three (3) copies of the Disciplinary Petition, the filing fee check, also enclosed herewith, and the Court's appointing order to the District Clerk of Bexar County, Texas, with the request that the suit be filed, service be obtained, and a filemarked copy of the petition be returned to the undersigned.

**425 SOLEDAD, SUITE #300, SAN ANTONIO, TEXAS 78205, (210) 271-7881**

Also enclosed are a pre-addressed envelope for your use in transmitting the petition, etc., to the District Clerk of Bexar County, Texas and a return envelope to be sent to the District Clerk of Bexar County, Texas, for the Clerk's use in returning a filemarked copy of the petition to the undersigned.

Thank you for your courtesies in this matter.

Sincerely,

Robert E. Kaszczuk
Assistant Disciplinary Counsel

Enclosures

REK/apr

# D

2014-CI-07644

BRAVENEC          *       IN THE JUDICIAL DISTRICT

V.                *          57TH DISTRICT COURT

MARTIN            *         BEXAR COUNTY, TEXAS

---

REPORTER'S RECORD

HONORABLE DICK ALCALA

MAY 23, 2014

---

# ORIGINAL

On the 23rd day of May, 2014, the above-entitled cause came on to be heard before the Honorable Dick Alcala in the 288th District Court of Bexar County, Texas, whereupon the following proceedings were taken by machine shorthand.

A P P E A R A N C E S

ATTORNEY FOR PLAINTIFFS
    Mr. Glenn Deadman
    SBOT # 78 5559
    705 S. Main
    San Antonio, TX 78204
    210.472.3900


DEFENDANT
    Mr. Rowland Martin, Pro Se

P-R-O-C-E-E-D-I-N-G-S

THE COURT: All right, then, we'll get on the record at this time in cause number 2014-CI-07644, Edward Bravenec and West Avenue, Inc., the plaintiff, versus Rowland Martin. It's Rowland, R-o-w-l-a-n-d, Martin Junior, the defendant.

Just announcements, state your name and who you represent, please.

MR. DEADMAN: Glen Deadman. I represent the plaintiffs, Edward L. Bravenec and 1216 West Avenue, Inc. Mr. Bravenec is here with me, both in his individual capacity, and as a representative of 1216 West Avenue, Inc.

Judge, we had a hearing before Judge Mery, who entered a restraining order, and the injunction hearing was set for today. The defendant Rowland Martin was served. He's filed an answer and a counterclaim, and we'd ask the court to take judicial notice of the file, but that is in the file.

THE COURT: I will do so.

MR. DEADMAN: The bailiff for Judge Casseb said he was here yesterday afternoon trying to seek a continuance and did file a continuance. His name was called this morning, and he has not attended, so he's not here this morning.

THE COURT: All right.

MR. DEADMAN: We do have for the court a binder of evidence that we wouldn't -- we were going to present, tab 1 through 19, and we'd move for the entry of those exhibits.

THE COURT: Okay. These exhibits are admitted.

MR. DEADMAN: Judge, this case has a long history. I would -- I can put Mr. Bravenec on the stand, but the documents I put in front of you are all from prior court proceedings and court orders. If you start at the front, you'll see that there was an injunction that involved Mr. Bravenec and the relevant parties concerning the foreclosure on a piece of property which is the subject matter of this suit. That was back in 2006.

THE COURT: All right.

MR. DEADMAN: The injunction was denied, and the property was set for foreclosure and was meant to go forward on a foreclosure. Since 2006, the defendant in this case, Mr. Martin, has pretty much been to every court, including federal court, probate court, continually filing lis pendens to stop the sale of this property. Probably most poignant to the case is some of Judge Hudspeth's orders that are set forth at tab 6,

which are orders back in 2013 where he actually ordered Mr. Martin to remove the lis pendens. Mr. Martin refused. The judge ordered him to expunge the lis pendens. He did not. There were ex parte notices filed and continued to be filed, until finally -- I believe there's an order at tab 15, again, by Judge Hudspeth, but found part way down through his order that the court observes that for years the plaintiff in this, being Rowland Martin, has engaged in a campaign of harassing, frivolous, and dutiful litigation. His lawsuits serve no purpose other than to increase the litigation costs of defendant and waste judicial resources.

Once again, this property has been placed on the market for sale. Once again, he has filed a lis pendens. We obtained a restraining order to have that taken off. We're now seeking assistance of this court to turn that into an injunction so the sale will not be stopped again. And, obviously, if he does this again, this time we're going to ask for criminal contempt.

Mr. Bravenec, you've heard the representations I've made to the court. Is there anything inaccurate or incorrect?

MR. BRAVENEC: No. There's been at least four lis pendens, and there is a buyer right now that wants to purchase the property, but every time there's a

sale, he files another lis pendens to stop it. This has been going on, the sale, for about eight months.

THE COURT: Okay. And your request for injunction is to prevent him from filing the lis pendens.

MR. DEADMAN: That's the sole purpose, Judge. I tender to the court a copy of the injunction. In addition we've asked that they not contact the lender. What's happened in the past is, even if there's not a lis pendens, he will contact the lender or the purchaser to let them know verbally there's clouds on the title, he has an interest, you can't transfer the title.

THE COURT: Okay. What date did you want to set that?

MR. DEADMAN: Any particular date for trial?

MR. BRAVENEC: Not in October or November. I don't care otherwise.

MR. DEADMAN: How about any date in the first week of February next year, Judge?

THE COURT: The 9th of February?

MR. DEADMAN: That will work, Judge.

THE COURT: All right. Here you go.

MR. DEADMAN: Thank you, Judge. May we

be excused.

THE COURT: Yes.

(Proceedings adjourned.)

THE COURT: All right. Mr. Martin's here in this hearing. I've just signed an injunction, sir. You want to be heard on that?

MR. MARTIN: Yes, Your Honor. First I'd like to say that I was served with the process for this court date yesterday. I was informed of an original court date on May the 27th, and I had filed an answer and counterclaims on Wednesday in preparation for a hearing that I thought was taking place on Tuesday.

Thursday, yesterday, less than 24 hours ago, I was served with the motion for resetting and a resetting order that I believe we signed, and so I'm not prepared, Your Honor, to go forward with the case. I just found out my -- my showing of cause why the injunction should not issue is fact intensive. I have witnesses that I would need to call, and I would also -- to have a fair hearing, I would also need to at least consult with a member of the Texas Bar.

I identified two attorneys, and I've previously spoken to one, but I have not had an opportunity to consult with them about the merits of this matter, and I would be irreparably harmed --

THE COURT: Just have a seat.

MR. MARTIN: Okay, sure. I would be irreparably harmed, Your Honor, if the plaintiffs were to receive an injunction and then proceed to a sale of the subject property without a fair and meaningful opportunity for me to be heard. I do have -- there are substantial grounds for my show cause position in the pleading that I filed on Wednesday, and I have -- I have -- in the time that I had, I did prepare a supplemental answer and counterclaims, but which has not been filed.

THE COURT: All right.

MR. MARTIN: As a matter of fact --

THE COURT: This involves the same property that is in the federal district court of which Judge Hudspeth's entered several orders?

MR. MARTIN: It's actually on appeal, Your Honor, to the U.S. Fifth Circuit Court of Appeals in case 1450093. Here is the pleading that I filed on Wednesday.

MR. DEADMAN: Judge, with regard to the appeal, you'll actually file that -- the appeal was dismissed with an order never to file anything again.

MR. MARTIN: That's not correct, Your Honor. I have current correspondence from the Fifth

Circuit Court of Appeals showing otherwise. The letter is from a deputy clerk extending the time for filing of a brief in case number 1450093, and the pleading supporting --

MR. DEADMAN: That's a different case number, Judge.

MR. MARTIN: Well, nonetheless, it is an appeal from the case that we're referring to, and it involves matters that are part of the subject matter of this proceeding.

THE COURT: What about the notice he's saying on this injunction matter?

MR. MARTIN: There's the service of process that I received, and the order that you signed is attached. If you refer to the return of service, you'll see the initials for Harry McCain, and it shows that he delivered it on the 22nd. He entered 22 in the space for indicating when the return was served -- when the matter was served.

THE COURT: Mr. Deadman?

MR. DEADMAN: Judge, may I confer with Mr. Martin for a second.

THE COURT: Yes.

(Discussion off the record.)

MR. DEADMAN: Judge, in deference that

the defendant is pro se, I'll agree to continue the matter 45 days, as long as a restraining order stays in effect, and we'll reset it for a hearing on a date that's convenient for Mr. Martin.

MR. MARTIN: That's fair.

THE COURT: All right. Now, you're talking about the restraining order -- the ex parte restraining order that's in effect?

MR. DEADMAN: Yes, sir.

MR. MARTIN: So the -- there might have been some events that transpired before I got here. I heard you refer, Your Honor, to an injunction. Are you referring --

MR. DEADMAN: Today is the injunction hearing.

THE COURT: Today's the injunction hearing.

MR. DEADMAN: And the judge actually signed the injunction, but with the court's permission, I'll withdraw that signature and withdraw the injunction, and we'll do the continuance.

MR. MARTIN: Very good. Thank you, Your Honor.

THE COURT: All right. But the restraining order remains in effect.

MR. DEADMAN: Yes, sir.

THE COURT: Whatever restraining order was signed before today.

MR. DEADMAN: Yes, sir.

MR. MARTIN: Yes, Your Honor.

MR. DEADMAN: If you could give me a day that's 45 days from now, Judge, and I'll write it in the order. What this says, that your continuance is granted. We're going to put a date in.

MR. MARTIN: Okay.

MR. DEADMAN: The conditions of the restraining order remain in effect, and you'll have your hearing at whichever judge we get assigned to.

MR. MARTIN: Very good.

(Discussion off the record.)

THE COURT: 7th of July?

MR. DEADMAN: May I check.

THE COURT: Check your calendars.

MR. DEADMAN: Yes. Thank you, Judge.

(Discussion off the record.)

THE COURT: Any day that week, I suppose, if you wanted to, July 7th, after 45 days.

MR. MARTIN: I would propose the Friday might be more convenient for witnesses.

THE COURT: The 11th? He's proposing the

11th. He's checking his calendar.

(Discussion off the record.)

MR. DEADMAN: July 9, Your Honor.

THE COURT: Okay.

MR. DEADMAN: 9 o'clock.

THE COURT: All right. Then the parties agree to reset this matter for July 9th, 2014 at 9 a.m.

MR. MARTIN: Yes, Your Honor.

MR. DEADMAN: In presiding.

THE COURT: In presiding, that's correct. And I did sign an injunction based on what I heard, but that order is withdrawn. The temporary restraining order is agreed between the parties, remains in effect.

MR. DEADMAN: Yes, sir.

MR. MARTIN: Yes, Your Honor.

THE COURT: All right. So ordered.

MR. DEADMAN: I present to the court the motion for continuance, if the court just wants to put the date in there.

THE COURT: July 9th, 2014.

MR. DEADMAN: And for the record I'm tendering a copy of the same order to Mr. Martin.

THE COURT: Okay.

MR. DEADMAN: Thank you, Your Honor.

THE COURT: I'm going to allow the

withdrawal of the matters that were submitted to the court.

MR. DEADMAN: Appreciate it, Judge, and the notebook.

MR. MARTIN: May I have a copy -- signed copy also?

MR. DEADMAN: I can get a photocopy.

MR. MARTIN: Okay. Thank you.

MR. DEADMAN: May we be excused, Judge.

THE COURT: Yes.

MR. DEADMAN: Thank you.

THE COURT: Thank you.

(Exhibits withdrawn.)

(Proceedings adjourned.)

STATE OF TEXAS

COUNTY OF BEXAR

I, Kayleen Rivera, Certified Court Reporter in and for Bexar County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of the proceedings requested in the above-styled and numbered cause, all of which were reported by me.

I further certify that the total cost for the preparation of this Reporter's Record was paid by Mr. Glenn Deadman.

To which I certify on this the _6th_ day of _June_, 20_14_.

_____
Kayleen Rivera, CSR 5364
Auxiliary Official Court Reporter
Criminal District Court Administration
101 W. Nueva, Suite 301
San Antonio, Texas 78205
Telephone: 210.335.2081
Exp: 12-31-2014

# E



# Fourth Court of Appeals
## San Antonio, Texas

December 8, 2014

No. 04-14-00841-CV

IN RE Rowland **MARTIN**

**ORDER**

Sitting:     Karen Angelini, Justice
             Marialyn Barnard, Justice
             Patricia O. Alvarez, Justice

On December 3, 2014, relator Rowland Martin filed a petition for writs of mandamus and prohibition. On December 8, 2014 relator filed an emergency motion for temporary relief. The court has considered the petition and is of the opinion that relator is not entitled to the relief sought. Accordingly, the petition for writs of mandamus and prohibition is DENIED. *See* TEX. R. APP. P. 52.8(a). Because this court has issued a stay in the related and currently pending interlocutory appeal, No. 04-14-00483-CV, relator's emergency motion for temporary relief in this proceeding is DENIED AS MOOT. The court's opinion will issue at a later date.

It is so **ORDERED** on December 8, 2014.

Marialyn Barnard, Justice

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court on this 8th day of December, 2014.

Keith E. Hottle
Clerk of Court



# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00841-CV

**IN RE** Rowland **MARTIN**

Original Mandamus Proceeding[1]

PER CURIAM

Sitting:     Karen Angelini, Justice
            Marialyn Barnard, Justice
            Patricia O. Alvarez, Justice

Delivered and Filed: December 17, 2014

PETITION FOR WRITS OF MANDAMUS AND PROHIBITION DENIED

On December 3, 2014, relator Rowland Martin filed an original proceeding seeking writs of mandamus and prohibition. On December 8, 2014, relator filed an emergency motion for temporary relief pending a ruling on the petition. The court has considered relator's petition and is of the opinion that relator is not entitled to the relief sought. Accordingly, the petition for writs of mandamus and prohibition is denied. *See* TEX. R. APP. P. 52.8(a). Because this court has issued a stay in the related and currently pending interlocutory appeal, No. 04-14-00483-CV, relator's emergency motion for temporary relief is denied as moot.

PER CURIAM

---

[1] This proceeding arises out of Cause No. 2014CI07644, styled *Edward L. Bravenec and 1216 West Ave., Inc. v. Rowland Martin Jr.*, pending in the 285th Judicial District Court, Bexar County, Texas, the Honorable Solomon Casseb, III presiding.

F

# FISHER ENTERPRISES LLC

senior debt placement                                                                                    corporate finance

September 21, 2006

Mr. Rowland Martin
Moroco Ventures, LLC
1216 West Avenue
San Antonio, TX 78201

Re: **$298,000 Secured Real Estate Bridge Loan**

Dear Mr. Martin:

As per our conversations with you and a review of the submitted information concerning the above referenced transaction, attached is our fee agreement for your review. If it is acceptable, please sign it and return it along with the retainer so that we may proceed. We represent a specific lender, to whom we are correspondent, and with whom we have reviewed your transaction. Based upon the representations that have been made, both verbally and in writing and subject to successful completion of due diligence, our lender will fund your loan request.

The lender that we represent will provide up to a 65% advance against the current 'as is' value of the strip center that you seek to refinance, secured with a first lien on the property. The lender will confirm the exact value of the real estate after an on site inspection and appraisal. The current 'as is' value is defined as the price that could be obtained in a 6 month marketing period. The loan will be priced at approximately 12%, interest only, with 3 to 4 points to the lender at closing as an administrative fee. Based on a $298,000 loan amount (65% of $459,000) the monthly payment would be $2,980. The lender must be satisfied that you can cover the monthly debt service and that there is a viable exit strategy. If necessary, you can place a portion of the initial loan amount into an interest reserve account to cover the monthly debt service for some period of time. They will normally offer a 2 to 3-year agreement, with no pre-payment penalties. Prior to closing you will be required to pay for the customary expenses and fees of the lender with respect to their necessary due diligence performed in connection with the closing of this loan. You can expect the loan to take approximately 30 days to close, subject to Bankruptcy Court approval. Our lender specializes in financing distressed real estate throughout North America.

Please feel free to call me if there are any questions regarding either of these proposed packages.

Sincerely,

David A. Franklin
Managing Member

DAF:cam

THE RODIN STUDIOS, 200 WEST 57TH STREET, SUITE 602
NEW YORK, NEW YORK 10019
212-223-1044 FAX 212-223-2694 WWW.FISHERENTERPRISESLLC.COM